IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TASMIA MOULVI,

      Plaintiff,

v.                                    Civil Action No. 3:20cv595

SAFETY HOLDINGS, INC., *et al.*,

      Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on three motions:

(1)      Defendant Safety Holdings, Inc.'s ("Safety Holdings") Motion to Sever pursuant to Rule 21[1], (ECF No. 28);

(2)      Defendant HireRight, LLC's ("HireRight") Motion to Sever, (ECF No. 31); and,

(3)      Safety Holdings and HireRight's (collectively, "Defendants") Joint Motion for Protective Order (collectively, the "Motions") pursuant to Rule 26,[2] (ECF No. 54).

Plaintiff Tasmia Moulvi responded to the Motions, (ECF Nos. 46, 56), and Defendants replied, (ECF Nos. 49, 50, 57). These matters are ripe for disposition. The Court dispenses with oral

---

[1] That rule provides in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

[2] That rule provides in pertinent part:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . .

Fed. R. Civ. P. 26(c)(1).

argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.

For the reasons that follow, the Court will deny the motions to sever and grant the Joint Motion for Protective Order.

## I.  Factual and Procedural Background

This action, arising under the Fair Credit Reporting Act ("FCRA"), stems from an employment background report on Moulvi that contained inaccurate information and improperly disclosed an expunged misdemeanor record.  Defendants filed their respective Motions to Sever, arguing severance is appropriate because this action involves three distinct class claims pertaining to separate companies with independent reporting processes.  During the pendency of those motions, Moulvi propounded on both defendants her First Set of Interrogatories ("Interrogatories"), (ECF Nos. 56-1, 56-2), and First Set of Requests for Production ("RFPs"), (ECF No. 57-1), which prompted Defendants to file their Joint Motion for Protective Order.

### A.    Allegations in Moulvi's Complaint

On April 6, 2014, police in Franklin County, Ohio stopped Moulvi, an undergraduate at a local university at the time, and charged her with possession of a fake driver's license and for being intoxicated in public while underage. (Compl. ¶¶ 24–25, ECF No. 1.)  Neither charge constituted a driving-related offense. (*Id.* ¶ 26.)  On September 24, 2014, Moulvi pleaded guilty to an amended charge of disorderly conduct, a fourth-degree misdemeanor in Ohio. (*Id.* ¶ 28.)  Like the original charges, this amended charge did not constitute a driving-related offense. (*Id.* ¶ 29.)

In 2016, over one year after her September 24, 2014 guilty plea and pursuant to Ohio Revised Code section 2953.32,[3] Moulvi requested that the Franklin County Municipal Court seal all records related to the April 6, 2014 incident and resulting misdemeanor conviction. (*Id.* ¶¶ 33–34.) On March 15, 2017, the municipal court granted Moulvi's request, sealing the records related to her misdemeanor conviction. (*Id.* ¶¶ 35–38 (citation omitted).) Thus, pursuant to Ohio Revised Code section 2953.32, all proceedings pertaining to Moulvi's conviction of disorderly conduct, including those stemming from her original charges, were to "be considered not to have occurred," Ohio Rev. Code § 2953.32(C)(2), and her conviction was sealed, (Compl. ¶¶ 37-38).

In July 2018, Moulvi, then living in the Washington, D.C. metropolitan area,[4] (*see id.* ¶ 30), applied for a project manager position with Iron Bow Technologies, LLC ("Iron Bow"), (*Id.* ¶ 41). On July 24, 2018, Iron Bow extended Moulvi a verbal job offer and she completed a written application. (*Id.* ¶ 43.) On the application, Moulvi stated that she did not have any

---

[3] Ohio Revised Code section 2953.32 provides, in pertinent part:

> [A]n eligible offender may apply to the sentencing court if convicted in this state . . . for the sealing of the record of the case that pertains to the conviction . . . Application may be made at . . . the expiration of one year after the offender's final discharge if convicted of . . . a misdemeanor.

Ohio Rev. Code § 2953.32(A)(1).

[4] The Court takes judicial notice of the fact that Iron Bow has two offices in Virginia. *See About Us*, Iron Bow Technologes, https://ironbow.com/about-us/ (last visited September 26, 2021); Fed. R. Evid. 201 (allowing judicial notice of readily determined and verifiable facts).

criminal convictions.[5]  (*Id.* ¶ 44.)  On August 1, 2018, Iron Bow sent Moulvi a written offer contingent on passing a criminal background check.  (*Id.* ¶ 45.)

Two days later, on August 3, 2018, Iron Bow engaged HireRight, an employee screening company, to perform a standard background check on Moulvi.  (*Id.* ¶¶ 8, 46.)  HireRight contacted Franklin County, Ohio; Fairfax County, Virginia; and the United States District Courts for the Eastern District of Virginia and the Southern District of Ohio—none of which reported any court records involving Moulvi.  (*Id.* ¶¶ 50–52.)  In addition to her criminal history, HireRight reviewed Moulvi's driving record during her background check.  (*Id.* ¶ 53.)  To obtain this information, HireRight requested Moulvi's "Motor Vehicle Record" from Safety Holdings, a driver information research company.  (*Id.* ¶¶ 7, 55.)  Safety Holdings in turn requested Moulvi's driving records from the Virginia Department of Motor Vehicles ("DMV").  (*Id.* ¶¶ 7, 59.)

Upon information and belief, DMV sold "information on the expunged Ohio offenses," even though these records are not reportable and contained inaccurate information.[6]  (*Id.* ¶¶ 60,

---

[5] Virginia law exempted Moulvi from reporting information about her expunged past charges and conviction as part of her application.  Virginia Code § 19.2-392.4 provides, in pertinent part:

> An employer . . . shall not, in any application, interview, or otherwise, require an applicant for employment . . . to disclose information concerning any arrest or criminal charge against [them] that has been expunged. An applicant need not, in answer to any question concerning any arrest or criminal charge that has not resulted in a conviction, include a reference to or information concerning arrests or charges that have been expunged.

Va. Code § 19.2-392.4.

[6] Moulvi alleges that Safety Holdings "provided the following erroneous information regarding [Moulvi] to [HireRight]:"

> a. A "Violation" on April 6, 2014 and a "Conviction" on September 24, 2014 for "Fraud App for Lic-Misdemeanor" in Ohio, assigning it a D002 ACD Code and a DB21 AVD Code;

63–64.)  DMV reported this information to Safety Holdings using industry-standard codes called

"ACD Codes."[7]  (*Id.* ¶¶ 20, 61–62.)  Safety Holdings then converted DMV's ACD Codes into its

own proprietary codes called "AVD Codes"[8] and transmitted that information to HireRight.  (*Id.*

¶¶ 62, 78–79, 84.)  Using the information furnished by Safety Holdings, HireRight prepared a

background report on Moulvi, allegedly without making "any effort at reconciling the conflicts"

between the information from Safety Holdings and HireRight's own investigation, (*Id.* ¶¶ 84–

85), which had returned no court records, (*Id.* ¶¶ 50–52.)

On August 7, 2018, HireRight delivered Moulvi's background report to Iron Bow.

(*Id.* ¶ 85.)  Afterwards, Iron Bow confronted Moulvi about the April 6, 2014 incident and

resulting misdemeanor conviction—a confrontation that allegedly caused Moulvi to suffer

---

    b.  Two separate "Violations/Convictions Failures to Appear Accidents" resulting in
        "**ACCIDENT**" in Fairfax County in 2015 and 2016, assigning both an AA01
        AVD Code; and[,]
    c.  A license revocation for "FALSE AFFIDAVIT" that was "ordered" and effective
        on October 9, 2014 that had a September 23, 2015 "CLR/DATE" and September
        23, 2018 "END/DATE", assigning it an DA06 AVD Code.

(Compl. ¶ 63.)

[7] ACD Codes ("AAMVA's Code Dictionary Codes") are "codes used to identify a
specific driving conviction."  (Compl. ¶ 20.)  Because the elements and names of driving
offenses differ across states, the American Association of Motor Vehicle Administrators
("AAMVA") developed ACD Codes to serve as a standardized system for states to report driving
offenses.  (*Id.*)  When an individual is convicted of a driving offense, the reporting state assigns
that offense an ACD code and places the ACD Code conviction information into the National
Driver Register, which is a national database that states access to decide whether to renew or
issue a driver's license.  (*Id.* ¶ 21.)

[8] In its reporting, Safety Holdings uses "its own private" codes, which it calls "AVD
Codes."  (Compl. ¶ 62.)  "AVD" stands for "ADR Violation Dictionary."  (Compl. ¶ 78.)  Safety
Holdings says that AVD Codes are similar to ACD Codes, but are "far more complex and
specific than the ACD codes and convey much more information to its customers."
(Compl. ¶ 81.)

anxiety and difficulty sleeping. (*Id.* ¶¶ 87, 91.) Although Moulvi ultimately convinced Iron Bow that much of the information in her background report was "false," and that her disorderly conduct conviction had "been expunged because an Ohio [j]udge had determined that she had been rehabilitated and [deserved] a clean slate, she submits that her anxiety persists. (*Id.* ¶¶ 95, 96.) The record does not explicitly state whether Iron Bow ever hired Moulvi.

### B.   Procedural History

On August 3, 2020, Moulvi filed her putative Class Action Complaint against Defendants and Richard D. Holcomb, the Commissioner of the DMV.[9] (Compl. 1.) Moulvi brings four counts against Defendants—three class claims and one individual claim. (*Id.* ¶¶ 97–145.)

In Count I, a class claim against HireRight, Moulvi alleges that HireRight improperly republished criminal conviction information from DMV driving reports furnished by Safety Holdings without cross-referencing that information against court records where the conviction allegedly occurred. (*Id.* ¶ 104.) Moulvi further alleges that in doing so, HireRight did not follow reasonable procedures to "assure the maximum possible accuracy of the information . . . it published about consumers" and thus violated the FCRA, 15 U.S.C. § 1681e(b).[10] (*Id.* ¶ 105.) Moulvi offers the following putative class for the claim as to HireRight:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant HireRight; (b) in the five years predating the filing of this

---

[9] On February 2, 2021, based on the parties' agreement, the Court dismissed all counts against Holcomb with prejudice. (Feb. 2, 2021 Order 1, ECF No. 53.)

[10] This FCRA provision provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

Complaint and continuing through the date which the class list is prepared;
(c) which contained a Motor Vehicle Record received from [Safety Holdings]
indicating a criminal conviction; (d) where HireRight's own database did not show
such a criminal record, and [(e)] where there was not a corresponding criminal
record conviction from the courthouse where the criminal conviction was reported
to have been entered.

(the "HireRight Class"). (*Id.* ¶ 98.)

In Count II, a class claim against Safety Holdings, Moulvi asserts that Safety Holdings

"has no reasonable procedure to prevent it from providing criminal record information that [is]

not in fact still reporting as [a] conviction[] by the respective court," in violation of the FCRA,

15 U.S.C. § 1681e(b). (*Id.* ¶¶ 119–20.) For this count, Moulvi proposes this putative class

against Safety Holdings:

All natural persons residing in the United States (a) who were the subject of a report
sold by Defendant [Safety Holdings]; (b) in the five years predating the filing of
this Complaint and continuing through the date which the class list is prepared;
(c) which contained a Motor Vehicle Record received from [Safety Holdings]
including a criminal record; (d) when the criminal record is not publicly accessible,
by seal, expungement or other basis, within 60 days before the date of the subject
report.

(the "Safety Holdings Internal Procedure Class"). (*Id.* ¶ 112.)

In Count III, the second class claim against Safety Holdings, Moulvi avers that Safety

Holdings inaccurately classifies certain offenses as driving-related or more serious offenses

during its conversion of DMV's ACD Codes into AVD Codes. (*Id.* ¶ 134.) She further asserts

that, in so doing, Safety Holdings has "failed to follow reasonable procedures to assure the

maximum possible accuracy of the information . . . it published about consumers," in violation of

the FCRA, 15 U.S.C. § 1681e(b). (*Id.* ¶ 135.) Here, Moulvi would define the second class

against Safety Holdings as follows:

All natural persons residing in the United States (a) who were the subject of a report
sold by Defendant [Safety Holdings]; (b) in the five years predating the filing of
this Complaint and continuing through the date which the class list is prepared;

(c) which contained a Motor Vehicle Record received from [Safety Holdings];
(d) where [Safety Holdings's] assigned private code was inconsistent with the
motor vehicle agency assigned [ACD] Code.

(the "Safety Holdings Miscoding Class"). (*Id.* ¶ 127.)

Finally, in Count IV, an individual claim only against Safety Holdings, Moulvi alleges

that Safety Holdings violated the Driver Privacy Protection Act of 1994 (the "DPPA"), 18 U.S.C.

§ 2724,[11] "by obtaining, disclosing, and using [Moulvi's] personal information from her motor

vehicle record without a permissible purpose under the [DPPA]." (Compl. ¶ 142.)

Defendants answered Plaintiff's Complaint and also filed the motions to sever. (ECF

Nos. 27, 28, 31, 33.) Defendants later filed the Joint Motion for Protective Order. (ECF No. 54.)

Moulvi responded to the motions, (ECF Nos. 46, 56), and Defendants replied, (ECF Nos. 49,

50, 57).

### C.   Moulvi's Discovery Requests

After initiating this lawsuit and during the pendency of Defendants' Motions to Sever, the

parties began conferring about pretrial matters, as reflected in copies of emails from the spring of

2021 that the parties submitted to the Court. On March 5, 2021, Moulvi's counsel emailed

Defendants' counsel to schedule a conference call "to make sure [they] wrap[ped] up anything

---

[11] That statute provides in pertinent part:

A person who knowingly obtains, discloses or uses personal information, from a
motor vehicle record, for a purpose not permitted under this chapter shall be liable
to the individual to whom the information pertains, who may bring a civil action in
a United States district court.

18 U.S.C. § 2724(a).

needed for purposes of Rule 26(f)."[12]  (Mem. Supp. Jt. Mot. Protective Order Ex. 1 "March 8,

2021 Email Thread I" 3, ECF No. 55-1.)  Three days later, on March 8, 2021, Defendants'

counsel responded, informing Moulvi's counsel of the defense team's desire to "hold off on the

26(f) [conference] call for now and reschedule once the court issues an order for a Rule 16(b)[13]

conference."  (*Id.* 2.)  Later that evening, Moulvi's counsel replied, detailing Moulvi's position

regarding several discovery issues, concluding the email by declaring that Rule 26(f) had been

satisfied.  (Mem. Supp. Jt. Mot. Protective Order Ex. 2 "March 8, 2021 Email Thread II" 2,

ECF No. 55-2.)

---

[12] That rule provides in pertinent part:

> (1) *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).

> (2) *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. . . .

Fed. R. Civ. P. 26(f)(1)–(2).

[13] That rule provides in pertinent part:

> [T]he district judge . . . must issue a scheduling order . . . after receiving the parties' report under Rule 26(f); or . . . after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference.

Fed. R. Civ. P. 16(b)(1).

Approximately one month later, on April 2, 2021, Moulvi's counsel emailed Defendants' counsel her Interrogatories, (ECF Nos. 56-1, 56-2), and RFPs, (ECF No. 57-1). (Mem. Supp. Mot. Protective Order Ex. 3 "Vicki Crissman April 2, 2021 Email I" 2, ECF No. 55-3; *id.* Ex. 4 "Vicki Crissman April 2, 2021 Email II" 2, ECF No. 55-4.) A week and a half later, on April 13, 2021, Defendants' counsel confirmed receipt of the discovery requests. (Mem. Supp. Mot. Protective Order Ex. 6 "April 13, 2021 Email Exchange" 2–3, ECF No. 55-6.) In the same email, Defendants' counsel stated their intention not to substantively respond to Moulvi's discovery because they believed those requests were premature and thus improper under the Federal Rules of Civil Procedure. (*Id.*) Moulvi's counsel replied, reiterating his belief that the parties "ha[d] held a Rule 26(f) conference," but also acknowledging, that "plenty of additional matters" remained unaddressed. (*Id.* 2.)

## II.  Analysis

Based on its analysis of the factors governing severance of claims, the Court will deny Safety Holdings and HireRight's motions to sever. Conversely, the Court will grant the Motion for Protective Order. The Court discusses both conclusions below.

### A.    The Court Will Deny the Motions as to Counts II Through IV Because the Majority of the Applicable Factors Weigh Against Severance

In its Motion to Sever, Safety Holdings seeks to sever Counts II through IV from the remainder of the case. (Safety Holdings Mot. Sever 1, ECF No. 28.) Safety Holdings rests its motion on three arguments. First, "[a]ll the claims focus on entirely separate conduct of each [D]efendant," and "[t]he challenge to Safety Holding's internal processes has nothing in common with the challenge to HireRight's internal processes," meaning Moulvi's claims would require different proof at trial. (Safety Holdings Mem. Supp. Mot. Sever 1–2, ECF No. 29.) Second, the complexity of this case renders a joint trial plan infeasible and presents a substantial

risk of confusing the jury at trial. (*Id.* 2.)  Finally, the prejudice Safety Holdings faces by adjudicating these putative class actions together outweighs the prejudice that would befall Moulvi if this Court granted severance. (*Id.* 2–3.)  HireRight adopts, incorporates, and expands on these arguments in its own Motion to Sever. (ECF No. 32.)

Although she agrees on the applicable legal principles, Moulvi arrives at the opposite conclusion.  First, Moulvi counters that her claims should be litigated together because they arise from the same transaction. (Resp. Mots. Sever 6–9, ECF No. 46.)  Second, she contends that although her claims "involve different processes by each Defendant," there exists "substantial overlap between the evidence and witnesses necessary to establish [her] claims." (*Id.* 6, 9.)  Third, Moulvi asserts that she would suffer prejudice if this Court grants severance because severance of her claims would force her to "litigate similar claims and conduct the same discovery in two separate cases" and that Defendants would not suffer prejudice if this Court denies their motions. (*Id.* 6, 13.)  Finally, she avers that severance would be unfair, inefficient, and duplicative, and that it would result in inconsistent decisions. (*See id.* 6, 14–15.)

On this record, the Court concludes that severance is improper and will deny Safety Holdings and HireRight's motions to sever.

### 1.    Legal Framework:  Federal Rules of Civil Procedure 20 and 21

Federal Rule of Civil Procedure 20(a) governs permissive joinder of parties and provides, in part, that plaintiffs may join multiple defendants in one action if:

> (A) any right to relief is asserted against [the defendants] . . . arising out of the same transaction, occurrence, or series of transactions or occurrences; and[,] (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a).  This Rule "gives courts wide discretion concerning the permissive joinder of parties," *SunTrust Banks, Inc. v. Robertson*, No. 2:09cv197, 2010 WL 11569451, at *2 (E.D.

Va. July 27, 2010) (quoting *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th

Cir. 2007)), and "must be interpreted to allow for the '*broadest possible scope of action*

consistent with fairness to the parties.'" *Hanna v. Gravett*, 262 F. Supp. 2d 643, 647 (E.D. Va.

2013) (emphasis added) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724

(1966)). Indeed, the United States Court of Appeals for the Fourth Circuit has stated that "the

rule should be construed in light of its purpose, which is to promote trial convenience and

expedite the final determination of disputes, thereby preventing multiple lawsuits," *Saval v. BL*

*Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (internal quotation marks omitted), and the Supreme

Court of the United States has declared that "joinder of claims, parties and remedies is strongly

encouraged," *United Mine Workers of America*, 383 U.S. at 724.

However, pursuant to Federal Rule of Civil Procedure 21, "[a] district court possesses

broad discretion in ruling on a requested severance,"[14] *Hanna*, 262 F. Supp. 2d at 647 (citing

*Saval*, 710 F.2d at 1031–32; 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal

Practice and Procedure § 1689 (2nd ed.1986)). Some courts have said that, when assessing

severance, courts wield "virtually unfettered discretion" in determining whether and when to

sever a claim. *Grayson Consulting, Inc. v. Cathcart*, No. 2:07cv2992, 2014 WL 1512029, at *2

(D.S.C. Apr. 8, 2014) (citing *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584,

604 n.9 (E.D. Va. 2005)). Indeed, courts might allow severance even if Rule 20(a)'s two-

pronged test seems to have been satisfied. *See Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d

208, 218 (E.D. Va. 2008) ("[A] court may 'deny joinder if it determines that the addition of the

---

[14] That rule provides, in pertinent part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party," and that "[t]he court may also sever any claim against a party." Fed. R. Civ. P. 21.

party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay.'" (quoting *Aleman*, 485 F.3d at 218 n. 5)).

In determining whether to exercise its Rule 21 discretion to sever, courts weigh multiple factors, including:

> (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed.

*RAI Strategic Holdings, Inc. v. Altria Client Servs. LLC*, No. 1:20cv393, 2020 WL 6882646, at *2 (E.D. Va. Sept. 3, 2020) (quoting *Equal Rts. Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007)). "Courts also consider (5) fundamental fairness, (6) judicial economy, (7) undue delay, and (8) the dual threat of duplicative litigation and inconsistent verdicts." *Latson v. Clarke*, No. 1:16cv447, 2016 WL 11642365, at *3 (E.D. Va. Oct. 14, 2016) (citing *Carmine v. Poffenbarger*, 154 F. Supp. 3d 309, 319–20 (E.D. Va. 2015)). Nevertheless, Supreme Court precedent and pertinent cases within the Fourth Circuit establish that courts should favor joinder of parties within a single case. *See United Mine Workers of America*, 383 U.S. at 724; *RAI Strategic Holdings, Inc.*, 2020 WL 6882646, at *2 (citing cases). "Accordingly, 'Rule 21 discretion [to sever] should be exercised sparingly.'" *Carmine*, 154 F. Supp. 3d at 320 (quoting *Tinsley v. Streich*, 143 F. Supp. 3d 450, 462 (W.D. Va. 2015)).

## 2. Considering the Applicable Factors, the Court Finds Severance Improper in This Case

This case presents a series of transactions unsuitable for severance. Upon weighing of the factors governing severance, the Court will deny Defendants' Motions to Sever. The Court discusses each factor seriatim.

### a. A Majority of the Issues Sought to Be Tried Separately Do Not Differ Significantly from One Another, Weighing Against Severance

The first factor—"whether the issues sought to be tried separately are significantly different from one another," *Equity Residential*, 483 F. Supp. 2d at 489—weighs against severance.

Although the claims against Defendants HireRight and Safety Holdings differ in some respects, the ultimate legal *issue* within each claim does not. *See Equity Residential*, 483 F. Supp. 2d at 490 ("Here, the issues to be tried are not 'significantly different' from one another . . . ."). At base, three of the four counts[15] against Defendants arise from the same issue: whether HireRight and Safety Holdings failed to follow reasonable procedures to prevent them from providing and publishing inaccurate information about consumers in violation of the FCRA, 15 U.S.C. § 1681e(b).[16] (*See* Compl. ¶¶ 105, 119-20, 135.) *See* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them . . . arising out of the same . . . series of transactions or occurrences . . . .") Thus, because Counts I, II, and III involve the same issue, the first factor weighs against severance.[17]

---

[15] In Count IV, Moulvi states that Safety Holdings "violated 18 U.S.C. § 2724 by obtaining, disclosing, and using the Plaintiff's personal information from her motor vehicle record without a permissible purpose under the Driver Privacy Protection Act" of 1994. (Compl. ¶ 142.)

[16] In all three counts, Moulvi contends that HireRight and Safety Holdings, respectively, "failed to follow reasonable procedures to assure the maximum possible accuracy of the information . . . that [they] published about consumers to [their] clients" in violation of the FCRA, 15 U.S.C. § 1681e(b). (Compl. ¶¶ 105, 120, 135.)

[17] The Court notes that even if the issues *did* differ significantly (meaning that the first factor weighed in favor of severance), most of the remaining factors would still weigh against severance. Thus, this Court would deny the motions to sever regardless.

The Court recognizes that Moulvi alleges different conduct by Defendants in each count. In Count I, Moulvi asserts that HireRight improperly "republished the criminal conviction information that it received from [Safety Holdings] without" verifying that information by "checking to make sure that there was a corresponding public record from the courthouse where the conviction was allegedly entered." (*Id.* ¶ 104.) In Count II, she declares that Safety Holdings had "no reasonable procedure [in place] to prevent it from providing criminal record information" that the respective courts are not "still reporting as convictions." (*Id.* ¶ 119.) And in Count III, Moulvi alleges that Safety Holdings "use[d] various ACD codes to reclassify offenses . . . which result[ed] in certain offenses being mistakenly classified as driving related or more serious offenses." (*Id.* ¶ 134.) However, this differing conduct is insufficient to render the *legal issues* asserted in each claim *significantly* different from one another.[18] This is especially true because Moulvi presents a seamless series of transactions that sufficiently interrelate to run counter to severance here. Simply put, the crucial question for each claim remains the same: Did the relevant Defendant follow reasonable procedures to ensure that they provided information to their clients that was as accurate as possible? (*See id.* ¶¶ 105, 120, 135.)

Defendants' reliance on *Advamtel, LLC v. AT&T Corp.*, 105 F. Supp. 2d 507 (E.D. Va. 2000), *Bear Creek Technologies, Inc. v. RCN Communications*, No. 2:11cv103, 2011 WL

---

[18] HireRight separately asserts that the differences between the services the two companies offer support a finding that the legal issues in each of Moulvi's claims differ significantly. (HireRight Mem. Supp. Mot. Sever 2–3.) This is incorrect. The differences between HireRight and Safety Holdings business actions have no bearing on the ultimate *legal issue* alleged in Counts I, II, and III.

HireRight also alleges that to prevail on her claim against HireRight, Moulvi will "have to demonstrate that this putative class . . . meets the requirements of Federal Rule of Civil Procedure 23," that doing so will require "distinct class arguments and evidence," and that this bolsters their contention that this Court should sever Moulvi's claims against them. (*Id.* 3–4, 7–8.) However, whether each Count's class will require different proof or arguments does not control whether this Court should sever Moulvi's claims against Defendants.

3626787 (E.D. Va. Aug. 17, 2011), *Latson v. Clarke*, No. 1:16cv447, 2016 WL 11642365 (E.D. Va. Oct. 14, 2016), and *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F. Supp. 505 (D. Md. 1995), is misplaced.  These cases are distinguishable from the action before this Court.

In *Advamtel*, the Court severed the claims because, although all claims involved long distance calls routed from the plaintiffs' local networks (making them a series of similar transactions), they were routed entirely differently by AT&T than they were by Sprint. *Advamtel*, 105 F. Supp. 2d at 515.  Nor did they proceed from AT&T to Sprint (or vice versa) as occurs among Defendants here.  *Id.*  Absent the continuity of the same transaction involving both defendants, the *Advamtel* court severed the claims.  *Id.*  Here, in contrast, a single application proceeds through a series of transactions to fully state Moulvi's claim.  *Advamtel* is inapposite.

In *Bear Creek*, the plaintiff had sued twenty-three media entities for the violation of the same patent.  *Bear Creek Techs., Inc.*, 2011 WL 3626787, at *1.  In oral argument, the plaintiff conceded that none of the defendants were affiliated, and in fact, were competitors.  *Id.* at *3. Finding that each defendant allegedly infringed the patent in its own manner, the *Bear Creek* court severed the actions.  *Id.* at *5.  Of course, the case at bar presents a far simpler record:  a series of transactions following one job application that resulted in violations of the FCPA.  *Bear Creek* does not pertain.

In *Latson*, the court granted a motion to sever under materially different circumstances. There, a *pro se* prisoner brought several claims of constitutional violations against six defendants.  *Latson*, 2016 WL 11642365, at *1–2.  He recounted several discrete moments of harm.  *See id.* at *5.  Because the events stood apart from one another, and because they involved different defendants, the court found that the first factor weighed in favor of severance.  *Id.*  The

16

series of transactions involving Moulvi's single application stand in clear contrast to the facts evaluated in *Latson*.

In *CVI/Beta Ventures*, a patent case, the court severed a *counterclaim* based on an entirely different patent and alleged by only one of the four defendants/intervenors against only one of the three plaintiffs.[19]  *CVI/Beta Ventures, Inc.*, 896 F.Supp. at 506–07.  The *CVI/Beta Ventures* court found that the cost of discovery and trial would be improperly increased for the uninvolved parties if the counterclaim were not severed.  This differs substantially from the case at bar, in which Moulvi asserts claims against Defendants arising out of a series of transactions involving, in turn, all three parties.

Despite Defendants' assertions to the contrary,[20] (*e.g.*, Safety Holdings Reply Mot. Sever 6, ECF No. 49), the facts of the case at bar illustrate that Moulvi's claims arose out of a series of transactions involving Defendants and culminating with HireRight's provision of her background report to Iron Bow.  First, Moulvi applied for employment at Iron Bow.  (Compl. ¶ 43.)  In the second transaction, Iron Bow engaged HireRight to perform a background check on Moulvi. (*See id.* ¶ 46.)  Third, HireRight requested Moulvi's "Motor Vehicle Record" from Safety Holdings.  (*See id.* ¶ 55.)  Fourth, Safety Holdings requested Moulvi's driving records from DMV.  (*See id.* ¶ 59.)  Fifth, DMV reported this information to Safety Holdings.  (*See id.* ¶ 60.)

---

[19] Defendants acknowledge that a case involving a counterclaim differs from the case at bar. (*See* Safety Holdings Reply Mot. Sever 8 (stating that a case referenced by Moulvi "involved the requested severance of counterclaims," making it unlike the action before this Court.))

[20] As part of their support for the motions to sever, Defendants aver that Moulvi has misjoined them because the circumstances of this case do not satisfy the requirements of Rule 20(a). (Safety Holdings Reply Mot. Sever 2–4.)  This Court finds, however, that, pursuant to Rule 20(a), Moulvi has properly joined Safety Holdings and HireRight in this case.

Then, in the six and seventh parts of this series of transactions, Safety Holdings provided HireRight with information from DMV that HireRight then used in Moulvi's background report that it provided to Iron Bow. (*See id.* ¶¶ 63, 84–85.) Thus, these cases controvert Defendants' contention that the first factor is not satisfied in this case.

### b. The Separable Issues Will Likely Require Different Witnesses and Different Documentary Proof, Favoring Severance

The second factor—"whether the separable issues require different witnesses and different documentary proof," *Equity Residential*, 483 F. Supp. 2d at 489—weighs in favor of severance.

Even though Moulvi "points to some overlap between witnesses and the documents associated with them," *Latson*, 2016 WL 11642365, at *5; (Resp. Mot. Sever 9–13), the Court finds that "separable issues will likely require different witnesses and documents,"[21] *Latson*, 2016 WL 11642365, at *5. This finding weighs strongly in favor of severance. *See id.*; *Carter v. Bank of Am., N.A.*, No. 1:11cv326, 2012 WL 2090530, at *2 (W.D.N.C. June 11, 2012) (severing claims, in part, because they "would require separate evidence and testimony").

---

[21] This is true even though Counts I, II, and III involve two different Defendants— HireRight and Safety Holdings—and they allege differences in Defendants' conduct. (*See* Compl. ¶¶ 104–05, 119–20, 134–35.) The Court sees that proving each claim in Counts I through III against HireRight and Safety Holdings will likely require at least some different witnesses and documentary proof. For instance, witnesses, such as HireRight employees knowledgeable about HireRight's "report preparation and record accuracy procedures," might know nothing about those of Safety Holdings, and vice versa. (*See* HireRight Mem. Supp. Mot. Sever 6, ECF No. 32.) In Count IV, running against Safety Holdings, involves a separate law, the DPPA, 18 U.S.C. § 2724. (Compl. ¶ 142.) This claim like would require proof separate from that of the other two counts against Safety Holdings. But, for the reasons stated above, these circumstances do not commend severance.

      **c.**    **Granting the Motions to Sever Would Prejudice Moulvi,
Weighing Against Severance**

The third factor—"whether the party opposing severance will be prejudiced if it is

granted," *Equity Residential*, 483 F. Supp. 2d at 489—also weighs against severance.

The Court concludes that severance of her claims against Defendants would prejudice

Moulvi for two reasons.  First, severance of her claims would require Moulvi "to twice litigate a

similar matter" when the same law firm represents both Defendants.  *RAI Strategic Holdings,*

*Inc.*, 2020 WL 6882646, at *6.  This could potentially impose on Moulvi the obligations of two

unnecessary, separate timelines for case deadlines.  *See id.*  Second, should this Court grant the

motions to sever, Moulvi would likely incur "substantially increased litigation costs" and could

face disparate inconsistent rulings on important issues.  (Resp. Mot. Sever 13.)  Thus, the third

factor weighs against severance.[22]

      **d.**    **Safety Holdings and HireRight Have Not Demonstrated That
They Will Be Prejudiced if this Court Does Not Grant Their
Motions, Weighing Against Severance**

The fourth factor—"whether the party requesting severance will be prejudiced if the

claims are not severed," *Equity Residential*, 483 F. Supp. 2d at 489—weighs against severance.

Defendants have not demonstrated that they will be prejudiced if this Court denies their motions

to sever.

---

[22] The Court does not find all of Moulvi's reasoning fully persuasive, though.  For
instance, the Court does not accept that, should it sever Moulvi's claims, she would necessarily
be forced to engage in "largely identical, repetitive discovery" from Defendants and third parties.
(Resp. Mot. Sever 13.)  Such an assertion is speculative, and Moulvi fails to provide grounded
argument showing that severance would force her to engage in largely indistinguishable
discovery in two separate cases.  Moreover, Moulvi's contentions regarding the potential
consequences of transfer in this case are premature.  No motion to transfer pends. Because the
Court finds that severance would prejudice Moulvi for other reasons, the third factor weighs in
favor of severance.

Defendants devote a significant portion of their briefing to the issue of jury confusion. (*See, e.g.*, Safety Holdings Mem. Supp. Mot. Sever 2, 13–14; Safety Holdings Reply Supp. Mot. Sever 9–10; HireRight Reply Supp. Mot. Sever. 8–9.) They declare that the "potential for confusion and needless complication of issues is massive," and that as a result, they would be prejudiced if this Court denied severance and forced them to litigate the claims against them in a single case. (Safety Holdings Mem. Supp. Mot. Sever 14.) According to Defendants, the "different claims, different time periods, different witnesses, and different sources of proof" potentially relevant to this action would confuse jurors at trial. (*Id.*) However, much of their argument consists of merely conclusory statements, and Defendants have provided no solid examples to enable the Court to make a finding as to the potential for jury confusion.[23] Despite Defendants' efforts to convince the Court that the potential for juror confusion would prejudice them should the Court choose not to sever their claims, Defendants' argument does not persuade.

The Court recognizes that two district courts in the Fourth Circuit have cited the risk of jury confusion in orders granting motions to sever. *RAI Strategic Holdings, Inc.*, 2020 WL 6882646, at \*6 (citing *Gregory v. FedEx Ground Package Sys., Inc.*, No. 2:10cv630, 2012 WL 2396873 (E.D. Va. May 9, 2012), *report and recommendation adopted*, 2012 WL 2396861 (E.D. Va. June 25, 2012); *CVI/Beta Ventures*, 896 F. Supp. at 506–07). In one of the cases, ten plaintiffs each asserted various claims against a single defendant. *Id.* (citing *Gregory*, 2012 WL 2396873). The other case "involved four plaintiffs, two defendants, [and] two intervenors." *Id.* (citing *CVI/Beta Ventures*, 896 F. Supp. at 505–06). Both cases differ materially from the action

---

[23] Juries in the Eastern District of Virginia and throughout the country hear highly complicated cases. The Court has the utmost confidence in the ability of this District's jurors to analyze facts such as those in the matter before the Court.

in this Court, which involves only one plaintiff, two defendants, and just four claims. Absent grounded argument from Defendants regarding the risk of jury confusion, the Court "will not anticipate significant jury confusion" and will not presume prejudice.[24] *Id.* Indeed, any jury confusion might more readily occur if a jury were to hear direct evidence of only one part of a series of transactions because one Defendant did not participate in the trial.

Defendants also suggest that, should the Court deny the motions to sever, the resulting nature of discovery and motions practice in this case would prejudice them. (Safety Holdings Mem. Supp. Mot. Sever 12–13; Safety Holdings Reply Supp. Mot. Sever 9.) They assert, for example, that without severance, "discovery in this case could be confusing and potentially difficult to control." (Safety Holdings Mem. Supp. Mot. Sever 13; Safety Holdings Reply Supp. Mot. Sever 9.) As with their assertions regarding the potential for jury confusion, this argument does not persuade. Courts in the Eastern District of Virginia and elsewhere regularly oversee cases, like the case at bar, involving far more numerous parties, more complex facts, and even more dissimilar issues among the parties.

Thus, because Defendants' arguments do not establish that they will be prejudiced if Moulvi's claims against them remain joined in a single case, the Court finds that the fourth factor weighs against severance.

    **e.**    **Fundamental Fairness Does Not Support Severance**

Fundamental fairness, the fifth factor, must also be examined. *Latson*, 2016 WL 11642365, at *6. Defendants proclaim that litigation of Moulvi's claims against them in a single proceeding "is inefficient, and, thus, unfair." (Safety Holdings Mem. Supp. Mot. Sever 15;

---

[24] Because the Court does not currently "anticipate significant jury confusion," it will not address Moulvi, Safety Holdings, or HireRight's arguments regarding separation of trials pursuant to Federal Rule of Civil Procedure 42.

Safety Holdings Reply Supp. Mot. Sever 10.)  To support this contention, they rely almost entirely on their arguments pertaining to discovery and jury confusion.[25]  (Safety Holdings Mem. Supp. Mot. Sever 15–16; Safety Holdings Reply Supp. Mot. Sever 10.)  Because this Court rejects Defendants' arguments regarding discovery and jury confusion, it finds that the fifth factor does not weigh in favor of severance.

### f.    Severance Would Not Promote Judicial Economy

The Court next considers the sixth factor—judicial economy, *Latson*, 2016 WL 11642365, at *6—and concludes that it weighs against severance.  Defendants aver that judicial economy weighs in favor of severance in this case, alluding to assertions made in other parts of their briefing that "Plaintiff's claims . . . are significantly individualized—both factually and legally—with essentially no overlap," and that severance would make discovery more efficient. (Safety Holdings Reply Supp. Mot. Sever 10–11; *see* Safety Holdings Mem. Supp. Mot. Sever 8–10; HireRight Mem. Supp. Mot. Sever 4–6.)  However, the Court has already rejected these contentions, and consequently, Defendants' argument regarding judicial economy does not prevail.  Moreover, the possibility of coordinated discovery in separate cases does not necessitate the conclusion that severance of the claims against Defendants will best preserve judicial economy.  It could support the inverse conclusion—that coordinated discovery in one case is more efficient.  *See Latson*, 2016 WL 11642365, at *6 (discussing the sixth factor and stating that "this Court will be able to more easily facilitate coordinated discovery, hearings, and trial").  Indeed, "[a]s a general rule, holding multiple trials when claims could be consolidated in one

---

[25] In support of their allegation that litigation of the claims against them within a single case would be fundamentally unfair, Defendants suggest that denying severance would prejudice putative class members.  (Safety Holdings Mem. Supp. Mot. Sever 15–16.)  However, this conclusory assertion is insufficient to support a finding that denial of the motions to sever would prejudice putative class members and be fundamentally unfair.

trial is not conducive to judicial economy." *RAI Strategic Holdings, Inc.*, 2020 WL 6882646, at

*6 (quoting *Broadcom Corp. v. Sony Corp.*, SACV 16-1052, 2016 WL 9108039, at *4 (C.D. Cal.

Dec. 20. 2016)). Thus, even if the Court recognizes that severance could yield some efficiencies,

on balance, keeping Moulvi's claims against Defendants in a single case before it will best

conserve scarce judicial resources.

### g. Trying Moulvi's Claims Within a Single Case Would Not Cause Undue Delay

Next, the Court considers undue delay. To determine whether denying the motions to

sever would cause undue delay, the Court analyzes whether keeping Plaintiff's claims joined

within a single case would "prejudice the nonmoving party"—Defendants—"or impose

unwarranted burdens on the [C]ourt."[26] *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376

F.3d 420, 427 (5th Cir. 2004). "[D]elay alone is . . . insufficient[.] . . . The delay must be *undue*,

i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Id.*

(emphasis in original).

This factor weighs against severance. Defendants assert that severance of the claims

against them would enable expedited trials of those claims. (Safety Holdings Mem. Supp. Mot.

Sever 16; Safety Holdings Reply Mot. Sever 11.) In doing so, they maintain that keeping each of

Moulvi's claims against them in a single case would potentially delay resolution of the claims

compared to a scenario in which this Court severed the claims. However, even presuming delay

would occur, nowhere do Defendants explain how or why a potentially slower resolution of

Moulvi's claims within a single case would cause *undue* delay—that is, delay that would

---

[26] This standard stems from cases analyzing whether granting leave to amend pleadings would cause undue delay. *See Mayeaux*, 376 F.3d at 427. However, in the interest of full analysis, the Court employs this standard to review Defendants' arguably analogous argument as to severance.

prejudice Defendants "or impose unwarranted burdens on the [C]ourt." *Mayeaux*, 376 F.3d at

427. *See also RAI Strategic Holdings, Inc.*, 2020 WL 6882646, at \*6 ("As a general rule,

holding multiple trials when claims could be consolidated in one trial is not conducive to judicial

economy." (quoting *Broadcom Corp.*, 2016 WL 9108039, at \*4)). Even if Defendants' argument

that denying the motions to sever could result in the Court deciding the claims against them more

slowly than if it had fewer claims before it, this potential delay would not prejudice Defendants

"or impose unwarranted burdens on the [C]ourt" and transform it into undue delay. *Mayeaux*,

376 F.3d at 427. As such, the seventh factor weighs against severance.

### h. The Potential for Duplicative Presentation of Facts and Issues, as Well as Inconsistent Rulings, Weighs Against Severance

Should this Court grant Defendants' motions to sever, "[s]everance would . . . require

duplicative presentation of at least some common factual and legal issues in separate judicial

forums." *Carmine*, 154 F. Supp. 3d at 322. Moreover, Moulvi and Defendants may be forced to

contend with inconsistent rulings on important issues, such as class certification or discovery

disputes, among separate courts. (Resp. Mots. Sever 13, 15.)

In sum, the Court will deny Defendants' motions to sever because the bulk of the

applicable factors weigh against severance. *See Latson*, 2016 WL 11642365, at \*5.

### B. The Court Will Grant Defendants' Joint Motion for Protective Order Because Moulvi's Discovery Requests Are Premature

Having found severance improper, the Court addresses Defendants' Joint Motion for

Protective Order. Defendants seek such an order to: (1) establish that Moulvi improperly

propounded interrogatories; and, (2) deem Moulvi's RFPs not yet served under Federal Rule of

Civil Procedure 26.[27]  (Jt. Mot. Protective Order 1, ECF No. 54.)  In support of their joint motion, Defendants maintain that Moulvi's "discovery demands are untimely and null" because a Rule 26(f) conference has not occurred and that "even if Rule 26(f) has been triggered, the pending Motions to Sever and the forthcoming motions to transfer warrant a stay of discovery in this case." (Mem. Supp. Jt. Mot. Protective Order 4–5, ECF No. 55.)  In response, Moulvi contends that she has satisfied her Rule 26(f) obligations and that she only propounded discovery after "Defendants refused to meet" "to ensure all 26(f) topics had been addressed."  (Resp. Jt. Mot. Protective Order 4, ECF No. 56.)  Moulvi also submits that "[d]iscovery is the next logical" step in this case, because the parties have apprised one another of their "claims, defenses, and . . . position on the facts."  (*Id.*)

Moulvi cannot commence discovery until a Rule 26(f) conference occurs and cannot unilaterally conduct a Rule 26(f) conference, so the Court will grant Defendants' Joint Motion for Protective Order, but will do so ordering the parties to have a 26(f) conference no later than fourteen days from the date of this Memorandum Opinion and Order.

### 1.   Legal Standard:  Protective Orders from Premature Discovery Requests Under Rule 26

Under Federal Rule of Civil Procedure 26(d), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).  The general moratorium on discovery ends once the parties hold a Rule 26(f) conference.  To satisfy the requirements of Rule 26(f), the

---

[27] That rule provides, in pertinent part, that a request for production served "before the parties have conferred as required by Rule 26(f)" "is considered to have been served at the first Rule 26(f) conference."  Fed. R. Civ. P. 26(d).

parties in conferring "must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan." Fed. R. Civ. P. 26(f)(2). "A discovery plan must state the parties' views and proposals on" a variety of topics, including the subjects and timing of discovery, issues about claims of privilege, and the timing and form of required disclosures. Fed. R. Civ. P. 26(f)(3).

A party receiving an early discovery request must respond in some manner even though the request is procedurally improper. *Madison v. Harford Cnty.*, 268 F.R.D. 563, 565 (D. Md. 2010). "A response could be substantive or in the form of an objection. Alternatively, a party could file a motion for a protective order pursuant to Rule 26(c), asking the Court to rule that the party did not have to respond to the discovery request." *Id.*; *accord Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 240 n.2 (S.D. W. Va. 2014) (noting that the party receiving premature discovery filed a motion for protective order, prompting the parties to stipulate to deeming the requests served on the date of a forthcoming Rule 26(f) conference).

    **2. No Rule 26(f) Conference Has Occurred, so the Court Will Grant the Joint Motion for Protective Order**

No Rule 26(f) conference has occurred, meaning that Moulvi has prematurely initiated discovery in this matter. The Court will therefore grant Defendants' Joint Motion for Protective Order.

According to Moulvi, a series of emails exchanged between her counsel and Defendants' counsel demonstrate that she has fulfilled her 26(f) obligations. (Resp. Jt. Mot. Protective Order 4.) Moulvi is incorrect. On March 5, 2021, Moulvi's counsel emailed Defendants' counsel to schedule a conference call "to make sure [they] wrap[ped] up anything needed for purposes of

Rule 26(f)." (Mar. 8, 2021 Email Thread I 3.)  In response, Defendants' counsel said Defendants

wanted to "hold off on the 26(f) [conference] call for now and reschedule once the court issues

an order for a Rule 16(b) conference." (*Id.* 2.)  Moulvi's counsel replied, outlining Moulvi's

positions on six outstanding Rule 26(f) issues and declaring that Rule 26(f) had been satisfied.

(Mar. 8, 2021 Email Thread II 2.)

      A party, however, cannot necessarily satisfy the requirements of Rule 26(f) through

assertion alone.  In this case, the record demonstrates that a Rule 26(f) conference has yet to

occur.  Several reasons compel this conclusion.  For one thing, the parties have not submitted a

discovery plan, nor has the Court entered one.  *See* Fed. R. Civ. P. 26(f)(2)–(3).  To be sure,

Local Rule 26(A)[28] authorizes this Court to issue an order excusing the Parties from submitting a

written report and permitting them "to report orally on their discovery plan at the [Rule 16(b)]

conference."  E.D. Va. Loc. Civ. R. 26(A)(1).  But the Court has not issued any order to this

effect, meaning Local Rule 26(a) does not govern in this case.  And while the emails counsel

exchanged contain some of Moulvi's plans for discovery, (*see* Mar. 8, 2021 Email Thread II 2),

they do not, taken together, show that the parties have developed a mutually agreeable discovery

plan, as the Federal Rules of Civil Procedure envision.  *See* Fed. R. Civ. P. 26 advisory

committee's notes to 1993 amendment, subdivision (f) (commenting that the amendment adding

the Rule 26(f) conference requirement "envisioned [that] . . . the parties would attempt to frame a

---

[28] That rule provides in pertinent part:

> In this district, pursuant to Fed. R. Civ. P. 26(f), . . . it may be required by order
> that . . . the written report outlining the discovery plan due under Rule 26(f) be filed
> fewer than fourteen (14) days after the conference between the parties or the parties
> be excused from submitting a written report and be permitted to report orally on
> their discovery plan at the conference required by Fed. R. Civ. P. 16(b).

E.D. Va. Loc. Civ. R. 26(A)(1).

mutually agreeable [discovery] plan"). Without an agreement as to discovery from all parties, Rule 26(f) has not been satisfied. *See Crutcher v. Fid. Nat'l Ins. Co.*, No. 06-5273, 2007 WL 430655, at *3 (E.D. La. Feb. 5, 2007) (finding two letters sent by a party's counsel did not "meet the requirement[] of [a] Rule 26(f) conference to . . . develop a discovery plan).

In addition, failing to establish a jointly developed discovery plan, the parties' email "correspondence does not show that [they have] discussed settlement, dispositive motions, amended pleadings, or many of the myriad other subjects the parties are required to consider at the Rule 26(f) conference." *Am. Action Network, Inc. v. Cater Am., LLC*, 983 F. Supp. 2d 112, 127 (D.D.C. 2013). In her brief, Moulvi contends that the parties have discussed their "claims and defenses[ and] the possibility of settlement." (Resp. Jt. Mot. Protective Order 4.) The record, however, does not support this contention. Indeed, the parties' discussion only shows that they strongly disagreed as to whether a Rule 26(f) conference had occurred and whether the discovery period had commenced. (Mar. 8, 2021 Email Thread II 2; Mar. 8, 2021 Email Thread VI 2-3.) *See Am. Action Network, Inc.*, 983 F. Supp. 2d at 127.

"The requirement for a Rule 26(f) conference is not a mere technicality." *Tonti Mgmt. Co. v. Soggy Doggie, LLC*, No. 19-13134, 2020 WL 9172035, at *4 (E.D. La. Aug. 13, 2020). The Federal Rules of Civil Procedure are clear: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," except in certain limited circumstances not present here. Fed. R. Civ. P. 26(d)(1). Because the parties have not yet conferred as required by Rule 26(f), the time for discovery has not begun, and Moulvi's discovery requests are premature. *Id.*; *Am. Action Network, Inc.*, 983 F. Supp. 2d at 127.

The Court therefore will grant Defendants' Motion for Protective Order.[29] Because Moulvi's RFPs fall under Rule 34,[30] the time for Defendants to respond will begin to run on the date of the Parties' Rule 26(f) conference. Fed. R. Civ. P. 26(d)(2)(B) (providing that early requests under Rule 34 are "considered to have been served at the first Rule 26(f) conference"); *see also Tonti Mgmt.*, 2020 WL 9172035, at *4 ("If a party serves an early Rule 34 request, that request is considered served on the date of the Rule 26(f) conference."). The Court will deem Plaintiff's interrogatories invalid. *See* Fed. R. Civ. P. 33 (governing interrogatories); *Crutcher*, 2007 WL 430655, at *3 (invalidating premature discovery request not served under Rule 34).

The Court will not impose a general stay on discovery. In their Joint Motion for Protective Order, Defendants properly ask this Court to rule that they do not have to respond to Moulvi's premature Interrogatories and RFPs. (Jt. Mot. Protective Order 1.) *See also Madison*, 268 F.R.D. at 565 (noting the propriety of pursuing such a protective order after receiving

---

[29] To the extent Moulvi argues that Defendants failed to carry their burden for a protective order, (*see* Resp. Jt. Mot. Protective Order 7), the Court finds good cause exists based on Moulvi's clear violation of the moratorium on seeking discovery before a Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1). Indeed, requiring Defendants to show good cause beyond establishing such a violation would improperly shift the burden for engaging in early discovery from the party seeking early discovery onto the party opposing it. *See, e.g., Reybold Grp. of Cos., Inc. v. Does 1-20*, 323 F.R.D. 205, 208 (D. Del. 2017) (noting that the party seeking early discovery must show "good cause"); *ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 61 (M.D. La. 2016) ("The party seeking [early] discovery has the burden of establishing good cause."); 8A Richard L. Marcus, *Federal Practice and Procedure* § 2046.1 (3d ed. 2021) ("Although the rule does not say so, it is implicit that some showing of good cause should be made to justify an order [permitting early discovery] . . . .").

[30] That rule provides in pertinent part:

A party may serve on any other party a request within the scope of Rule 26(b) . . . to produce . . . the following items in the responding party's possession, custody, or control: . . . any designated documents or electronically stored information . . . or . . . any designated tangible things.

Fed. R. Civ. P. 34(a).

premature discovery requests).  Defendants have not moved for a stay of discovery, despite arguing for one in their briefs, (*see* Mem. Supp. Jt. Mot. Protective Order 5–6; Reply Jt. Mot. Protective Order 3–6), so the Court will reserve judgment on whether a discovery stay is appropriate.  Instead, the Court advises the Parties to hold their Rule 26(f) conference within 30 days of the date of this Memorandum Opinion and accompanying Order.

### III.  Conclusion

For the foregoing reasons, the Court will deny Defendants' Motions to Sever, (ECF Nos. 28, 31), and will grant their Joint Motion for Protective Order, (ECF No. 54).

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 09/30/2021
Richmond, Virginia